IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHAWN KOCH, )
 )
 Plaintiff, )
 )
vs. ) CIVIL NO. 07-cv-0004-MJR
 )
DARRELL WESTERMAN, *et al.*, )
 )
 Defendants. )

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, an inmate at the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff seeks monetary and injunctive relief for alleged violations of his First, Fourth, and Eighth Amendment rights. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A. An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).

**THE COMPLAINT**

In restating the allegations of the complaint, below, the Court has found it useful to divide Plaintiff's *pro se* action into counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**A. Allegations concerning access to the courts.**

Plaintiff's complaint claims that he was denied access to the courts in violation of his constitutional rights on four separate occasions. First, Plaintiff alleges that in January 2005 Defendant "John/Jane Doe 2" failed to process Plaintiff's payment of a $5.00 filing fee that Plaintiff owed to the United States District Court for the Central District of Illinois. Plaintiff asserts that his federal case was dismissed because the filing fee was not received by the court. For Count 1, Plaintiff claims that Defendant "John/Jane Doe 2" denied him access to the courts in connection with this federal case.

Second, Plaintiff alleges that in February 2005 Defendant "John/Jane Doe 2" delivered court mail to him late and opened court mail addressed to him mail outside of his presence. For Count 2, Plaintiff claims that Defendant "John/Jane Doe 2" denied him access to the courts by delivering his legal mail late and by opening the court mail outside of his presence.

Third, Plaintiff alleges that in July 2005 Defendant B. Thomas destroyed a "supplemental TRO motion" with the Defendant's name on it. For Count 3, Plaintiff claims that Defendant B. Thomas denied him access to the courts by destroying his TRO motion.

Fourth, Plaintiff alleges that in August 2005 he received a motion to dismiss concerning a case he had pending in state court. Plaintiff further alleges that he was advised that he had 21 days

to respond to the motion. Plaintiff asserts that he sent a request for legal materials to Menard's law library through Defendant "John/Jane Doe 2," but that this Defendant did not mail the request (or, perhaps, did not mail all of it). Because his request for legal materials was not fulfilled, Plaintiff contends that he was unable to file a timely response to the motion to dismiss. Plaintiff states that the state court denied his request for an extension of time and dismissed his action. For Count 4, Plaintiff claims that Defendant "John/Jane Doe 2" denied him access to the courts by not processing his request for legal materials which led to the dismissal of the state court action.

**B. Allegations concerning retaliation.**

Plaintiff's complaint recites numerous acts which Plaintiff contends were undertaken in retaliation for Plaintiff's filing of grievances. These acts, which are alleged to have occurred between April 2005 and October 2005, include: (1) searches of Plaintiff's cell; (2) searches of Plaintiff's person; (3) verbal harassment directed at Plaintiff; (4) disdainful looks and stares directed at Plaintiff; (5) confiscation of certain items of Plaintiff's personal property (e.g., a racquetball and a pair of gloves); (6) other inmates being told that Plaintiff is a snitch; and (7) physical confrontations and uses of force (e.g., being pushed into a door frame, squeezing Plaintiff's testicles, and being "assaulted"). Plaintiff asserts that all of these alleged acts were committed by or at the direction of Defendant Westerman. Plaintiff claims that, as part of Westerman's retaliation scheme, Defendants B. Thomas, John Doe 1, and Miller participated in some or all of the alleged retaliatory acts. For Count 5, Plaintiff alleges that Defendants Westerman, B. Thomas, John Doe 1, and Miller retaliated against him for filing grievances in violation of Plaintiff's First Amendment rights.

3

**C. Allegations concerning "unreasonable" search and seizure.**

The alleged retaliatory searches of Plaintiff's cell and his person, described in Count 5, form the basis of Plaintiff's claim, Count 6, that Defendants Westerman, B. Thomas, Brad Thomas, and Coleman conducted searches that were "unreasonable" under the Fourth Amendment. Liberally construing the complaint, it appears that Plaintiff would allege that the searches were conducted without proper cause.

**D. Allegations concerning excessive use of force.**

The alleged retaliatory physical confrontations, described in Count 5, form the basis of Plaintiff's claim, Count 7, that the Defendants Westerman, B. Thomas, Miller, and John Doe 1 used excessive force on him in violation of his Eighth Amendment rights.

**E. Allegations concerning denial of medical care.**

Plaintiff claims that on May 23, 2005, he suffered an injury to his elbow and shoulder as a result of being pushed into the door frame in retaliation for filing grievances. For Count 8, Plaintiff claims that Defendants Westerman, B. Thomas, and John Doe 1 denied him adequate medical care for this injury. For Count 9, Plaintiff claims he was denied medical treatment by Defendants Westerman, Miller, and John Doe 1 after being "assaulted" on October 19, 2005, as part of the retaliation scheme. With regard to this claim, however, Plaintiff has not alleged any type of injury from the assault.

For Count 10, Plaintiff alleges that he was denied adequate medical care for his injuries by Defendants Reardon, Murray, Brad Thomas, Coleman, Uchtman, Benton, and Walker, even after he informed them of his need for treatment.

**F. Allegations concerning grievances and supervisors**.

For Count 11, Plaintiff claims that he advised Defendants Reardon, Murray, Brad Thomas, Coleman, Uchtman, Jane Doe 3, Benton, and Walker of the pattern of physical abuses being inflicted on him by Defendants Westerman, B. Thomas, Miller, and John Doe 1. Liberally construing this allegation, it appears that Plaintiff claims that the Defendants failed to adequately protect him from a known risk of attack.

For Count 12, Plaintiff claims that he advised Defendants Reardon, Murray, Brad Thomas, Coleman, Uchtman, Jane Doe 3, Benton, and Walker that he had been denied access to the courts by Defendants "John/Jane Doe 2" and B. Thomas, as described in Counts 1 through 4, but they failed to take corrective action.

Finally, for Count 13, Plaintiff claims that he advised Defendants Reardon, Murray, Brad Thomas, Coleman, Uchtman, Jane Doe 3, Benton, and Walker that he had been subjected to a pattern of "unreasonable" searches and seizures by Defendants Westerman, B. Thomas, Miller, and John Doe 1, as described in Count 6, but they failed to take corrective action.

**DISCUSSION**

**A. Count 1 - 4 access to courts**.

Prisoners have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). Violations of that right may be vindicated in federal court in a civil rights action pursuant to 42 U.S.C. § 1983. To state an "access to the courts" claim, an inmate must allege that he suffered actual prejudice to a non-frivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 349-55 (1996) (holding that allegation of actual prejudice is required to state an access to the courts claim).

In Count 1, Plaintiff alleges that Defendant "John/Jane Doe 2" failed to timely process his

payment request which led to his federal case being dismissed by the Central District of Illinois for non-payment of the filing fee. On its face, this allegation states a claim. However, in reviewing Plaintiff's prior litigation for "strikes" under 28 U.S.C. § 1915(g), this Court became aware that Plaintiff's federal lawsuit was subsequently re-opened when the Central District of Illinois received the payment several days later. *See Koch v. Hinsley*, No. 2005-cv-4003-JBM (C.D. Ill., order re-opening case on Feb. 25, 2005). Because the case was, in fact, re-opened, Plaintiff's claim that he suffered actual prejudice from the dismissal of this action is without a factual basis. Consequently, Count 1 of the complaint should be dismissed pursuant to 28 U.S.C. § 1915A.

In Count 2, Plaintiff alleges that he was denied "access to courts" because Defendant "John/Jane Doe 2" delivered his legal mail late and opened court mail outside of his presence. The Seventh Circuit has noted that an inmate's legal mail should be afforded greater protections than non-legal mail because of the potential interference with the inmate's right of access to the courts. *See Kaufman v. McCaughtry,* 419 F.3d 678, 685-86 (7th Cir. 2005). Plaintiff, however, has not alleged how these acts caused actual prejudice to a non-frivolous legal claim. Because there is no allegation of actual prejudice to a non-frivolous claim, Count 2 does not state an "access to courts" claim. *See Lewis v. Casey*, 518 U.S. at 349-55. Therefore, Count 2 of the complaint should be dismissed pursuant to § 1915A.

In Count 3, Plaintiff alleges that Defendant B. Thomas destroyed a "supplemental TRO motion" with the Thomas's name on it. To be sure, the Court does not condone such actions. But, by itself, this allegation does not state an "access to court" claim because there is no allegation of actual prejudice to a non-frivolous legal action. *Lewis v. Carey*, 518 U.S. at 349-55. Therefore, Count 3 of the complaint should be dismissed pursuant to § 1915A.

Count 4 of the complaint - alleging that Defendant "John/Jane Doe 2" failed to process his request for legal materials which led to Plaintiff's state court action being dismissed - survives review under § 1915A and should not be dismissed at this time.

**B. Count 5 retaliation.**

It is well settled that prison officials may not retaliate against inmates for exercising their constitutional rights. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). But not every grievance, lawsuit, or complaint, constitutes protected speech. Speech concerning matters of personal, rather than public, concern is not protected. *McElroy v. Lopac*, 403 U.S. F.3d 855, 858-59 (7th Cir. 2005) (noting constitutionally protected activity must relate to a public concern).

It is also settled that the retaliatory act itself does not have to independently violate the Constitution. *Babcock*, 102 F.3d at 275. For example, prisoners have no protected interest in being housed in a particular prison or particular part of a prison, and, therefore, when a prisoner is transferred to a more restrictive environment it does not rise to the level of a constitutional violation. *See DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). If, however, the motivating factor in transferring a prisoner to a more restrictive prison is retaliation for a prisoner exercising his First Amendment rights, then the prisoner has a claim under § 1983. *See Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996).

The Court, however, does not understand the Constitution as providing a remedy for every slight or petty annoyance that befalls an inmate even if done with retaliatory intent. While the retaliatory act does not have to rise to the level of an independent constitutional violation in order

7

to be actionable under § 1983, it still must rise above the inconsequential or trivial. *Cf. Burlington Northern & Sante Fe Railway Co. v. White*, 548 U.S. 53, 67 (2006) (in context of a Title VII retaliation claim, only those actions a reasonable employee would have found materially adverse are actionable; petty slights and minor annoyances that often take place at work do not constitute actionable retaliation). Incarceration means that a prisoner's life is controlled by prison officials down to the smallest detail. Minor changes in a prisoner's life lacking a material adverse affect are just part of the unpleasantness of prison life and ought not support a retaliation claim. *Id*. Thus, to state a retaliation claim, the alleged retaliatory act must be something a reasonable inmate would find materially adverse. If the alleged retaliatory act had only a trivial or inconsequential effect, then there is no retaliation claim.

Standing alone, many of the retaliatory acts alleged in the complaint, such as cell searches, unpleasant looks, and verbal harassment, have only a trivial or inconsequential effect. These are the minor annoyances of everyday prison life and would not support a retaliation claim. Other retaliatory acts alleged in the complaint, however, are of a much more serious nature such as the seizure of Plaintiff's personal property and the physical altercations. Even if the force used in these incidents did not violate Plaintiff's Eighth Amendment rights, the force applied appears to be more than trivial or *de minimis*. Therefore, Count 5 of the complaint survives review under § 1915A and should not be dismissed at this time.

**C. Count 6 search and seizure.**

In Count 6, Plaintiff alleges that the "retaliatory" searches and seizures described in Count 5 also were "unreasonable" under the Fourth Amendment. A prisoner, however, has no expectation of privacy in his prison cell and, therefore, the Fourth Amendment proscription against unreasonable

searches does not apply. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Accordingly, Plaintiff's Fourth Amendment claims should be dismissed pursuant to § 1915A.

**D. Count 7 excessive use of force.**

In Count 7, Plaintiff claims that the alleged retaliatory shove and assault described in Count 5 also violated his Eighth Amendment rights. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). In the case at hand, Plaintiff alleges that he suffered injury to his elbow and shoulder as a result of the force used against him. Based on the foregoing, Count 7 survives review under § 1915A and should not be dismissed.

**E. Counts 8 - 10 denial of adequate medical care.**

In Counts 8 through 10 of the complaint, Plaintiff claims that each Defendant had actual knowledge (either through direct observation or review of Plaintiff's grievances) of Plaintiff's

9

serious injury and his need for medical treatment. The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996). Based on the foregoing, Counts 8 through 10 of the complaint survive threshold review and should not be dismissed at this time.

**F. Count 11 failure to protect.**

The gravamen of Count 11 is that the Defendants - who appear to hold supervisory positions - had actual knowledge of their subordinates' proclivities to use excessive force on inmates and, by failing to adequately supervise, train, or control them, subjected Plaintiff to an excessive risk of harm. A prison official's deliberate indifference to a substantial risk of harm to an violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S 825 , 828 (1994). Count 11 survives threshold review and should not be dismissed at this time.

**G. Count 12 supervisory knowledge (denial of access to courts).**

In Count 12, Plaintiff alleges that he informed various supervisors that their subordinates had denied him access to courts (as described in Counts 1 through 4). As discussed above, Counts 1 through 3 fail to state an "access to the courts" claim and, therefore, do not support a claim against the supervisory defendants in Count 12.

With regard to supervisory liability for Count 4, "the doctrine of respondeat superior does

10

not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.' " *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), *quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

In this case, the allegations of the complaint and the attached exhibits indicate that the underlying constitutional violation was complete *before* the supervisors learned of it. That is, Plaintiff's state court action was dismissed and, afterwards, the defendant supervisors learned of the dismissal by means of Plaintiff's grievances. While supervisors may be held liable for directing a subordinate in an unconstitutional course of action or turning a blind-eye to a subordinate's unconstitutional actions while they are ongoing, *Chavez,* 251 F.3d at 651, a supervisor's after-the-fact knowledge of a constitutional violation committed by a subordinate does not satisfy the personal responsibility requirement of § 1983. As alleged, the supervisors's inaction did not cause Plaintiff's case to be dismissed and they were powerless to undo the dismissal. Therefore, Count 12 should be dismissed pursuant to § 1915A.

**H. Count 13 supervisory knowledge (searches).**

Count 13 of the complaint, which seeks to hold various supervisors liable for the alleged unreasonable searches performed by prison employees described in Count 6 of the complaint, must be dismissed pursuant to § 1915A. As discussed above, the searches described in Count 6 did not violate Plaintiff's Fourth Amendment rights. Because there was no underlying constitutional violation committed by the employees, no supervisory liability attaches. Therefore, Count 13 should be dismissed pursuant to § 1915A.

**I. Severance of claims.**

Rule 18(a) of the Federal Rules of Civil Procedure permits Plaintiff to assert all of his claims

against one defendant in one civil action. In this case, after performing a threshold review, the first surviving claim is Count 4 against only Defendant "John/Jane Doe 2" for denying Plaintiff access to the courts. If Plaintiff had any other colorable claims against Defendant "John/Jane Doe 2," then - pursuant to Rule 18(a) - Plaintiff could assert those other claims against "John/Jane Doe 2" in this action.

The complaint, however, does not assert any other colorable claims against Defendant "John/Jane Doe 2." Instead, the surviving counts of the complaint assert claims against Defendants Westerman, B. Thomas, John Doe 1, Miller, Reardon, Murray, Brad Thomas, Coleman, Uchtman, Benton, Jane Doe 3, and Walker. The joinder of these Defendants with Defendant "John/Jane Doe 2" in Count 4 appears to be improper under Rule 20(a)(2) which provides:

> Persons . . . may be joined in one action as defendants if:
>
> (2) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law of fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

The claims asserted in Counts 5, 7, 8, 9, 10, and 11, concerning retaliation, excessive use of force, denial of adequate medical care, and failure to protect Plaintiff from a known harm, do not arise from the same transaction, occurrence, or series of transactions or occurrences as the claim asserted in Count 4. The Seventh Circuit has confirmed that separate, unrelated claims filed by prisoners belong in different suits. *George v. Smith*, 507 F.3d 605, 607, (7th Cir. 2007). Accordingly, the claims asserted against Defendants Westerman, B. Thomas, John Doe 1, Miller, Reardon, Murray, Brad Thomas, Colemand, Uchtman, Jane Doe 3, Benton, and Walker are not

12

sufficiently related to Plaintiff's claim against Defendant "John/Jane Doe 2" to allow them to proceed together in one lawsuit.

Plaintiff is **ADVISED** that the Court intends to sever the claims against Defendants Westerman, B. Thomas, John Doe 1, Miller, Reardon, Murray, Brad Thomas, Coleman, Uchtman, Jane Doe 3, Benton, and Walker (Counts 5, 7, 8, 9, 10, and 11). The claims against these defendants will be removed from this case and opened in a new case. A new case number will be assigned and a second filing fee will be assessed.

Plaintiff is further **ADVISED** that he may move to voluntarily dismiss Counts 5, 7, 8, 9, 10, and 11 within 30 days from the date of this Order. If Counts 5, 7, 8, 9, 10, and 11 are voluntarily dismissed, a new case will not be opened and no additional filing fee will be assessed. If Plaintiff does not move to voluntarily dismiss Counts 5, 7, 8, 9, 10, and 11 withing 30 days, those counts will be severed, a separate case will be opened, and a second filing fee will be assessed.

## DISPOSITION

**IT IS HEREBY ORDERED** that Counts 1, 2, 3, 6, 12, and 13 of the complaint are **DISMISSED** pursuant to 28 U.S.C. § 1915A.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants Westerman, B. Thomas, Miller, Reardon, Murray, Brad Thomas, Coleman, Uchtman, Benton, and Walker. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants Westerman, B. Thomas, Miller, Reardon, Murray,

Brad Thomas, Coleman, Uchtman, Benton, and Walker in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. **Service shall not be made on "John Doe 1," "John/Jane Doe 2," or "Jane Doe 3" until such time as Plaintiff has identified them by name on a USM-285 form <u>and</u> in a properly filed amended complaint. Plaintiff is ADVISED that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.**

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received. If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

14

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days

after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED this 2nd day of February, 2009.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**